UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


GREGORY JOHNSON,

            Plaintiff,

v.                                    Case No. 3:17-cv-998-J-34JRK

TONY ANDERSON, et al.,

            Defendants.

─────────────────────────────

## **ORDER**

### **I. Status**

Plaintiff Gregory Johnson, an inmate of the Florida penal system, initiated this action on August 23, 2017, by filing a Civil Rights Complaint (Complaint; Doc. 1) with exhibits (P. Ex.). In the Complaint, Johnson asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Warden Tony Anderson; (2) Sergeant Morgan McKinley; (3) Corrections Officer Ray Bryant; and (4) Captain Isiah Griffin. He alleges that the Defendants violated his federal constitutional rights when they used excessive force against him and/or allowed the use of excessive force against him on December 28, 2016, at Hamilton Correctional Institution (HCI). He seeks compensatory and punitive damages as well as injunctive and declaratory relief.

This matter is before the Court on Defendants' Motion for Summary Judgment (Motion; Doc. 20). They submitted exhibits in

support of their summary judgment request. <u>See</u> Def. Exs. A-I (Docs. 20-1 through 20-10); Def. Supp. Exs. A; B (Docs. 27-1; 27-2).[1] The Court advised Johnson of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. <u>See</u> Summary Judgment Notice (Doc. 23); Order (Doc. 6). Johnson responded. <u>See</u> Response to Summary Judgment (Response; Doc. 38); Declaration in Opposition to Defendants' Motion for Summary Judgment (Johnson Decl.; Doc. 37). Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations

In his Complaint, Johnson asserts that Defendant McKinley sprayed him with chemical agents and "pummeled" him with punches and kicks on December 28, 2016, at HCI. Complaint at 5.[2] He avers that Defendants Bryant and Griffin assisted McKinley instead of trying to stop McKinley's assaultive behavior. <u>See</u> <u>id.</u> According to Johnson, Defendant Anderson allowed his officers to use excessive force against Johnson, and authorized Johnson's transfer to another

_____

[1] With the Court's permission, <u>see</u> Order (Doc. 24), the Defendants filed four digital video disks (videos) under seal. <u>See</u> Defendants' Sealed Notice (Doc. 28); Def. Exs. D; E.

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

institution that same day, so Johnson could not identify the "involved officers." Id.

As to the underlying facts of his claims, Johnson states that he experienced psychological issues on December 28, 2016, due to a lengthy history of depression as well as "situations" in the dormitory that motivated him to declare a psychological emergency. Id. at 7. He maintains that McKinley and Corrections Officer Roman were conducting the afternoon count when McKinley told Johnson that he would address Johnson's concerns after the count. See id. According to Johnson, McKinley "motioned" for Johnson to "get up" and "follow him" to the laundry room. Id. Johnson asserts that he told McKinley that he was "declaring a psychological emergency" to avoid the dormitory's negative effect on his mental health. Id. He alleges that McKinley sprayed him with chemical agents in the laundry room, and both McKinley and Bryant "pummeled" him "with kicks and punches" until he "fell unconscious." Id. He states that Defendant Griffin kicked him in his mid-section, and Griffin and Bryant failed to stop McKinley's assault on him. See id. at 5. He avers that McKinley and Bryant ordered him to "stop resisting," but he "was not resisting at all." Id. at 7. He states that they placed hand and leg restraints on him and carried him to confinement. See id. According to Johnson, he "felt a sharp pain to [his] lower back" that restored him to consciousness, as he heard McKinley comment on the word "killer" tattooed on Johnson's back. Id. at 7-

8. Johnson avers that when he heard someone ask about the cuts on his back, he coughed as he tried to reply. See id. at 8. He maintains that he did not spit, but instead coughed "as a reflex from being sprayed" with chemical agents. Id. He also asserts that his "personal sneakers" were confiscated and not returned. See id.

Johnson avers that officers "constantly" sprayed him with chemical agents while he was in hand restraints and "disoriented" in a decontamination shower. Id. He states that he screamed for help and "finally gain[ed] [his] bearings" and permitted them to remove the hand restraints, so he could change his clothes and transfer to another decontamination shower. Id. Johnson maintains that he was "scared" and "did not trust anyone not even the nurse" because he feared "being poisoned with dirty or used equipment or something." Id. He alleges that the Florida Department of Corrections (FDOC) "emergency transferred" him to another institution where he was assigned to close management one (CM1) confinement due to McKinley's "false documents" associated with disciplinary reports (DR(s)) that he wrote. Id. at 8-9. He states that he suffers with vision and teeth problems as a result of the incidents. See id. at 9.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[3] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### IV. Summary of the Arguments

In the Motion, Defendants assert that there are no genuine issues of material fact, and therefore, the Court should grant

summary judgment in their favor. They state that Johnson fails to state a claim against Defendant Anderson, <u>see</u> Motion at 10-15, and that they are entitled to qualified immunity, <u>see</u> <u>id.</u> at 6-10. Defendants maintain that there are three related incidents involving Johnson on the afternoon of December 28, 2016: (1) McKinley's use of chemical agents; Bryant and Griffin's failure to intervene; and McKinley, Bryant, and Griffin's punching and kicking Johnson,[4] <u>see</u> <u>id.</u> at 2-3; (2) Griffin's directive to four officers to carry Johnson to a decontamination shower, and use of force to subdue Johnson; <u>see</u> <u>id.</u> at 3; and, (3) Defendant Anderson's authorization for a corrections officer's use of chemical agents while Johnson was confined in a decontamination shower, <u>see</u> <u>id.</u> at 4.

In his Response, Johnson asserts that he relies on his declaration (Doc. 37), deposition (Def. Ex. I, Doc. 20-10 (P. Depo.)), and medical records attached to his Complaint (Doc. 1 at 11-12) to show that there are genuine issues of material fact that preclude summary judgment in Defendants' favor. <u>See</u> Response at 18-19. He also asks the Court to strike Defendants' Motion because it is "confusing" and includes false facts. <u>Id.</u> at 19. Additionally, Johnson requests leave to amend his Complaint, <u>see</u> <u>id.</u> at 5, 24, and reopen discovery, <u>see</u> <u>id.</u> at 5-8.

---

[4] The Court will refer to these events as the laundry-room incident.

# V. Analysis

## A. Eighth Amendment Use of Excessive Force
## and Failure to Intervene

Johnson asserts that Defendant McKinley sprayed him with chemical agents and kicked and punched him on December 28, 2016, in the HCI laundry room. <u>See</u> Complaint at 5. He avers that Defendants Bryant and Griffin failed to stop McKinley's attack on Johnson and joined McKinley in his assaultive efforts. <u>See</u> <u>id.</u> According to Johnson, Defendant Anderson allowed his subordinate officers to use excessive force against Johnson, and thereafter authorized Johnson's transfer to another institution to thwart Johnson's ability to identify the officers involved in the excessive force. <u>See</u> <u>id.</u> With respect to the appropriate analysis in an excessive use of force case, the Eleventh Circuit has explained.

> [O]ur core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations

omitted).[5] However, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 112 S.Ct. at 1000 (quotations omitted).

McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). "When considering these factors, [courts] 'give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.'" Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). "While a lack of serious injury is relevant to the inquiry, '[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts.'" Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam)

---

[5] See Whitley v. Albers, 475 U.S. 312, 321 (1986).

(quoting <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 38 (2010)). "A prisoner may avoid summary judgment, 'only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain.'" <u>Stallworth v. Tyson</u>, 578 F. App'x 948, 953 (11th Cir. 2014) (quoting <u>Brown v. Smith</u>, 813 F.2d 1187, 1188 (11th Cir. 1987)).

Moreover, "an officer can be liable for failing to intervene when another officer uses excessive force." <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000); <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407-08 (11th Cir. 1998). This liability, however, only arises when the officer is in a position to intervene and fails to do so. <u>See</u> <u>Keating v. City of Miami</u>, 598 F.3d 753, 764 (11th Cir. 2010); <u>see</u> <u>also</u> <u>Fils v. City of Aventura</u>, 647 F.3d 1272, 1290 n.21 (11th Cir. 2011); <u>Brown v. City of Huntsville</u>, 608 F.3d 724, 740 n.25 (11th Cir. 2010) ("Because the relevant events happened so quickly, the record does not reflect any point at which [the officer] could have intervened to prevent [another officer's] use of excessive force . . . .").

### 1. The Laundry Room Incident Excessive Use of Force and Failure to Intervene

According to Johnson, Defendant McKinley unjustly sprayed him with chemical agents, Defendants Bryant and Griffin failed to stop McKinley's excessive use of force, and the three Defendants punched

and kicked Johnson. <u>See</u> Complaint at 5. In an Incident Report, Defendant McKinley provided the following narrative, in pertinent part:

> On December 28, 2016 at approximately 4:03 PM, while assigned as the E-Dormitory Housing Supervisor, Officer Ray Bryant and I were present near the Laundry Room entrance door on Wing Two in E-Dormitory with Inmate JOHNSON, Gregory DC#W08280, who had become disruptive during the commencement of the afternoon count.[6] While counseling with inmate JOHNSON he became argumentative and began yelling obscenities towards me, shouting "F[-]ck You! You bout to get some Rec!"[7] I gave inmate JOHNSON multiple orders to cease his actions, as I simultaneously retrieved my assigned OC Chemical Agent Canister[.] Inmate JOHNSON then began rushing towards me with clenched fists, and it then became necessary to reactively utilize my assigned Sabre Red OC (Oleoresin Capsicum) MK-4 High Volume Streamer, AX# 10-4, and administer a continuous stream of chemical agent to the upper torso and facial area of inmate JOHNSON, in an attempt to gain compliance from inmate JOHNSON and cease his attack. Inmate JOHNSON continued his attack, yelling obscenities and striking me in the face. At that time I exhausted my Chemical Agent[s] Canister and then assumed a defensive stance and struck inmate JOHNSON in the face and upper torso, with a clenched fist, in order to defend myself and cease Inmate JOHNSON from striking me. Officer Ray Bryant

---

[6] Defendants submitted a two-minute fixed-wing video of HCI's E dormitory on December 28, 2016, at 4:02 p.m. <u>See</u> Def. Ex. E (sealed). The video captures two corrections officers conducting the afternoon count. According to the video, Johnson, who occupied the third bed on the right-side of the room, put his shoes on, followed the two officers who had finished the count, and left the area.

[7] According to Johnson, "rec" is "a term used to challenge someone to fight." Johnson Decl. at 4; <u>see</u> Complaint at 7.

11

was present and obtained a hold to inmate
JOHNSON'S upper torso, as I obtained a hold to
inmate JOHNSON'S extremities[.] I then with
the assistance of Officer Bryant forced inmate
JOHNSON to the floor and utilized knee spikes
to distract inmate JOHNSON from his
resistance. Officer Bryant and I were able to
maneuver inmate JOHNSON chest down on the
floor, and utilize the floor to immobilize
inmate JOHNSON'S upper torso and apply wrist
restraints. Officer Benjamin Roman was present
in the dormitory and arrived on scene.[8]
Officer Roman initiated the Incident Command
System (ICS) utilizing his assigned hand held
radio and requested the assistance of
additional security staff. Officer Bryant and
I then continued utilizing the floor to
immobol[ize] inmate JOHNSON until additional
security staff arrived on scene. When
additional security staff arrived, they
obtained a hold to inmate JOHNSON[,] applied
leg restraints[,] and inmate JOHNSON was
assisted to a standing position. At that
time[,] all force ceased by me. Inmate JOHNSON
immediately refused to walk and lowered
himself back to the floor. The responding
additional security staff members then lifted
inmate JOHNSON utilizing a chest up four man
carry and transported inmate JOHNSON from the
dormitory without further incident. I am
trained in the use of Chemical Agents as
reflected on my Weapons Card.

Def. Ex. B, Incident Report, Doc. 20-3 at 5-6. McKinley wrote DRs

against Johnson for disobeying an order and attempted battery on a

corrections officer, and Johnson was found guilty of both

infractions. See Def. Exs. F, Doc. 20-7 at 2-3; G, Doc. 20-8 at 2-

3. Defendant Bryant provided a similar factual account of what had

transpired in the laundry room.

---

[8] See Def. Ex. B, Incident Report, Doc. 20-3 at 20 (Officer
Roman's narrative).

On December 28, 2016 at approximately 4:03 pm, while assigned as the Internal Security Officer, I was present in E-Dormitory Wing Two near the Laundry Room door when Inmate JOHNSON, Gregory DC#W08280 began striking Sergeant Morgan McKinley in the face and upper torso. I assisted Sergeant McKinley by obtaining a hold to inmate JOHNSON's upper torso and with the assistance of Sergeant McKinley we forced inmate JOHNSON to the floor. Sergeant McKinley obtained a hold to inmate JOHNSON's left upper extremity as he continued to attempt to strike staff present. I attempted to obtain a hold to inmate JOHNSON's right upper extremity when he struck me with a clenched fist on the side of my face. I obtained a hold to inmate JOHNSON's arm as Sergeant McKinley utilized knee spikes as a distraction tactic, in order to roll inmate JOHNSON face down [o]n the floor so wrist restraints could be applied. Sergeant McKinley and I were able to maneuver inmate JOHNSON chest down on the floor and place him in wrist restraints. I then utilized the floor to immobilize inmate JOHNSON until additional security staff arrived. At that time all force ceased by me.

Id. at 17.

In support of Defendants' Motion, McKinley and Bryant submitted similar declarations as to what occurred with Johnson in the laundry room. See Def. Supp. Exs. A, Doc. 27-1, Declaration of Morgan McKinley (McKinley Decl.); B, Doc. 27-2, Declaration of Ray Bryant (Bryant Decl.). Additionally, Griffin provided a declaration, stating in pertinent part:

On December 28, 2016 I was working as the Shift Supervisor at Hamilton Correctional Institution, Annex. At around 4:00 PM I received a radio call about an attack on officers by an inmate, and a use of force which occurred in response to the attack. Upon

receipt of the radio call, I responded to the
scene. I determined that chemical agents and
physical force had to spontaneously be used
against Plaintiff by Sergeant Morgan McKinley
and Officer Ray Bryant. The Plaintiff did not
appear to have any injuries. However, Sergeant
McKinley appeared to have injuries to his head
and facial area. I then had Sergeant McKinley
and Officer Bryant report to medical for
medical assessment.

Def. Ex. C, Doc. 20-4, Declaration of Isiah Griffin (Griffin Decl.)

at 2. According to McKinley and Bryant's declarations, McKinley had

minor injuries (swelling on the top of his head and a swollen left

eye), <u>see</u> McKinley Decl. at 3,[9] and Bryant had no injuries, <u>see</u>

Bryant Decl. at 2.

In a declaration opposing Defendants' summary judgment motion,

Johnson describes the incident as follows:

During count[,] I spoke[] to Sergeant
McKinley attempting to declare a psychological
emergency. He advised me to hold on until he
finish[ed] counting to speak to him.

Sergeant McKinley returned, walked me to
the laundry room, and said it look[s] like you
want some rec. . . .

I urgently told him I am declaring a
psychological emergency[.] I don't want to
fight.

Sergeant McKinley had two officer[s][10]
already in the laundry room awaiting and

---

[9] <u>See</u> Def. Ex. B, Doc. 20-3, Diagram of Injury for Morgan
McKinley, at 30.

[10] According to Johnson, he has not identified a "third
officer" who was allegedly present with Defendants McKinley and
Bryant in the laundry room. Johnson Decl. at 5 n.1; P. Depo. at 25.

ordered them to call back up before coming towards me while preparing to fight (took off his shades and hat[] and reach[ed] for his canister on his belt) rushed me once he sprayed me hitting me in the eyes.

To show submission[,] I was on my knees with my hands up trying to plead with him. He answered my pleadings with gas[] strikes[,] punches[,] and kicks with the other officers beating on me too while I was blinded.

This onslaught continued even after several officers arrived who got in on the beating. I felt multiple boots[,] fist blows[,] twisting of my extremities in effort to break them.

While on the floor, Sergeant McKinley [was] on top of me hit[t]ing while jeering [and] repeating the ph[r]ase on my tattoo. I snatched my limbs back[,] put them close into my body[,] and my hands behind my back to show I am not fighting back or resisting but they continued [and] tried to break limbs and strike me while theatrically yel[ling] out "stop resisting, stop resisting."

I was get[t]ing hit with a weapon[,] either the chemical agents canister or radio from the sound of it and eventually I passed out.

Johnson Decl. at 4-5 (footnote omitted). In his deposition, Johnson provided a similar account of what had transpired in the laundry room with Defendants McKinley, Bryant, and Griffin. See P. Depo. at 12-29.

Upon review of the record, Defendants' Motion is due to be denied. At a minimum, the record before the Court reflects genuine issues of material fact as to whether Defendants McKinley, Bryant, and Griffin used an excessive amount of force upon Johnson, and

whether Bryant and Griffin failed to intervene to stop McKinley's use of excessive force. While Johnson and Defendants McKinley, Bryant, and Griffin agree that McKinley and Bryant used force, the parties present markedly different accounts regarding whether McKinley and Bryant used force in a good-faith effort to maintain or restore discipline, or applied it maliciously and sadistically to cause harm. Johnson asserts that Defendants McKinley, Bryant, and Griffin's alleged assaultive behavior was unnecessary and excessive, and involved kicking, punching, and hitting while Johnson was not resisting. In contrast, Defendants McKinley and Bryant maintain that they used only necessary force to restore order, bring Johnson into compliance with verbal orders, and cease Johnson's combative behavior. Defendant Griffin maintains that he arrived on the scene after McKinley and Bryant had subdued Johnson. See Griffin Decl.

The United States Supreme Court has acknowledged that the extent of the injury is a factor that may provide some evidence of the amount of force applied and whether the use of force was necessary under the specified circumstances.

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. Id. at 7, 112 S.Ct. 995.[11] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation."

---

[11] Hudson, 503 U.S. 1.

16

> Ibid.(quoting Whitley, 475 U.S. at 321, 106
> S.Ct. 1078). The extent of injury may also
> provide some indication of the amount of force
> applied. . . .
>
> Injury and force, however, are only
> imperfectly correlated, and it is the latter
> that ultimately counts. . . .

Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) (per curiam). However, a court ultimately should decide an excessive force claim based on the nature of the force used rather than the extent of the injury. Id. at 38.

Johnson maintains that Suwannee Correctional Institution (SCI) medical personnel documented his injuries the following day (December 29). See Response at 18 (citing P. Ex., Emergency Room Record and Diagram of Injury, Doc. 1 at 11-12). The Emergency Room Record lists the following injuries: (1) right-side facial swelling; (2) 4.5 centimeter abrasion to the right of his midline scalp; (3) left-side neck swelling; (4) right wrist abrasions; (5) left wrist abrasions; (6) mild swelling and tenderness to his right inner knee; (7) red, swollen right large toe with swelling two inches above the toe; (8) two small left shoulder abrasions, each measuring 1 centimeter; and (9) a right shoulder "rub abrasion," measuring about 3 centimeters. P. Ex., Doc. 1 at 12. The SCI Diagram of Injury states that Johnson could not stand on his right leg due to a tender, swollen knee, "but [there was] no deformity to indicate a broken bone or joint dislocation. . . ." Id. At deposition, Johnson stated that his "major injuries" as a result of

the December 28th incidents were his displaced jaw and broken toe. P. Depo. at 43. He acknowledged that SCI medical personnel accurately documented his injuries on the December 29th Diagram of Injury. <u>See</u> <u>id.</u> at 46.

Here, the parties offer significantly different accounts of Defendant McKinley's use of force, the motivation for McKinley's decision to spray Johnson with chemical agents and force Johnson to the ground, and the involvement and motivations of Bryant and Griffin. On this record, the Court finds that there remain genuine issues of material fact with respect to Plaintiff's Eighth Amendment claims relating to the December 28th laundry-room incident against Defendants McKinley, Bryant, and Griffin. As such, Defendants' Motion is due to be denied.[12]

## 2. Use of Force During the Four-Man Escort

According to Johnson, corrections officers placed hand and leg restraints on him, and carried him to the first decontamination shower. <u>See</u> Complaint at 7. In a declaration, Defendant Griffin describes what transpired after the chemical spraying in the laundry room.

---

[12] "[B]ecause liability can be imposed upon prison guards who are present at the scene and who are in a position to intervene but fail to take reasonable steps to stop excessive force by other guards," <u>see</u> <u>Clark v. Argutto</u>, 221 F. App'x 819, 826 (11th Cir. 2007), and since Johnson's Eighth Amendment failure to intervene claims against Bryant and Griffin are closely intertwined with his excessive use of force claim against McKinley, the summary judgment Motion will be denied as to the failure to intervene claims.

> After Sergeant McKinley and Officer Bryant
> left the area, myself, and Sergeants Benjamin
> Griffith, John Clark, Edgar Soules, and John
> Buda attempted to escort Plaintiff for a
> decontamination shower. However, Plaintiff
> refused to get up and walk, so I had the
> Sergeants pick him up and carry him,
> **necessitating an additional use of force
> against Plaintiff.** Eventually a wheelchair
> arrived, and I had Plaintiff placed in the
> wheelchair for transport so that the officers
> no longer needed to carry him. During the
> escort, Plaintiff continued to be combative
> and attempted to break free of the officers'
> grasp and bite and spit on officers. Based on
> Plaintiff's behavior, a spit shield was placed
> on Plaintiff. At around 4:17 PM[,] Plaintiff
> arrived at a shower cell for a decontamination
> shower.

Griffin Decl. at 1 (emphasis added). Sergeants Griffith, Clark,

Soules, and Buda (the escorting officers) provided similar

accounts. See Def. Ex. B, Doc. 20-3 at 9, 12, 18, 19 (stating they

participated in a "four man carry" of Johnson with each holding one

of Johnson's extremities). In response, Johnson asserts that he was

not combative during the escort, but instead was defenseless as the

four officers "hog-tied" him, and carried him to a decontamination

shower. Response at 13. In his declaration, Johnson states, in

pertinent part:

> I regain[ed] consciousness hog-tied [and] four
> men carried [me] outside [b]linded from the
> chemical agents in my eyes and coughing from
> swallow[ing] some[.] [T]he officers yelled
> he's spit[t]ing [and] forcefully dropped me[,]
> gassed me[,] str[uck] me until I lost
> consciousness again.

Johnson Decl. at 5. At deposition, Johnson stated that the officers placed a spit shield on him, and "knocked" him out again. P. Depo. at 30. He had "no idea" how the officers knocked him out because he could not see anything due to the chemical agents that McKinley had applied in the laundry room. Id. It appears that, for the most part, Johnson's use-of-force assertions are against "the transporting officers" who are not named as Defendants. Response at 13; see P. Depo. at 30; Johnson Decl. at 5. Nevertheless, Johnson complains that Defendant Griffin "was present in the laundry room" and kicked him in the mid-section. Complaint at 5.

Again, the parties offer significantly different accounts of Defendant Griffin's participation in transporting Johnson from the laundry room to the decontamination shower. On this record, the Court finds that there remain genuine issues of material fact with respect to Plaintiff's Eighth Amendment excessive-use-of-force claim (relating to the transportation of Johnson from the laundry room to the decontamination shower) against Defendant Griffin. As such, Defendants' Motion is due to be denied.

**3. Chemical Spraying at the First Decontamination Shower**

Johnson asserts that he was "constantly" sprayed with chemical agents" while confined in the first decontamination shower on December 28, 2016. See Complaint at 8. In an Incident Report, Defendant Griffin described what transpired after officers

transported Johnson to the H-Dormitory confinement housing unit and

placed him in the wing-one, number-one decontamination shower.

> Inmate JOHNSON, at approximately 4:17 PM complied with orders given and began his decontamination shower. At approximately 4:22 PM Inmate JOHNSON then began yelling in the shower cell attempting to incite other inmates on the Confinement Wing creating a disturbance. Warden Tony Anderson was contacted and authorized the use of Chemical Agents to quell inmate JOHNSON's disturbance and physical resistance to lawful commands. The use of OC [(Oleoresin Capsicum (pepper spray))] chemical agents was necessitated and consisted of two applications of OC Chemical agent[s] and one subsequent application of CS [(Orthochlorbenzal Malononitrile or (Orthochlorobenzylidene Malononitrile)] Chemical agent in the form of Three (03) One (01) second bursts, administered by Officer David Noles.[13] At approximately 4:45 PM, prior to the application of Organized Chemical Force, RN Albert Booth was contacted and attempted to utilize CIT (Crisis Intervention Technique), due to inmate JOHNSON'S S-3 Mental Health Grade, without result. Following the administration of CS Chemical Agent, inmate JOHNSON complied with orders given and was removed from the Decontamination shower on Wing One (01) of H-Dormitory and escorted by uninvolved security staff suited in Cell Extraction equipment, to the Wing Three (03) decontamination shower. The cell extraction equipment was utilized to reduce the risk of injury to staff present, in the event that inmate JOHNSON should resume his combative behavior. Inmate JOHNSON received a decontamination shower and ultimately received a post use of force medical assessment, completed by RN Albert Booth, with no injuries noted, see attached DC4-708, Diagram of Injury, and DC4-701C, Emergency Room

---

[13] Officer David Noles provided a similar account. <u>See</u> Def. Ex. B, Doc. 20-3 at 11.

Record.[14]

Def. Ex. B, Doc. 20-3 at 6; <u>see</u> Griffin Decl. at 1-2.

Defendants submitted the hand-held video, Def. Ex. D (sealed), and the fixed-wing video, Def. Ex. E (sealed), that captured what transpired while Johnson was in the first decontamination shower from approximately 4:15 p.m. until 5:27 p.m. Johnson acknowledges that the hand-held video recorded what had transpired. <u>See</u> P. Depo. at 34. The video evidence shows that Johnson was noncompliant with lawful commands, and therefore, a corrections officer sprayed him with chemical agents at approximately 4:47, 4:54, and 5:15 p.m. <u>See</u> Def. Exs. B, Doc. 20-3 at 3; D. The Use of Force Report states that Johnson "became physically resistant to lawful commands and began to incite other inmates in the dormitory resulting in the use of Organized Chemical [(OC)] Force." Def. Ex. B, Doc. 20-3 at 3. Johnson refused to get dressed, submit to handcuffs, and cease his yelling. <u>See</u> Def. Ex. D. Defendant Griffin and other officers periodically peered through the decontamination shower cell door to check on Johnson's progress, counsel him about noncompliance, and advise him to follow orders. <u>See</u> <u>id.</u>

At 4:32 p.m., when Defendant Griffin gave Johnson a "final order" to get dressed, stand up, and submit to handcuffs, Johnson complied. <u>See</u> <u>id.</u> Nevertheless, Johnson shouted to other inmates

---

[14] <u>See</u> Def. Ex. B, Doc. 20-3 at 27-28, Emergency Room Record and Diagram of Injury, dated December 28, 2016, at 4:50 p.m.

for help, and refused to quiet down. See id. At 4:45 p.m., Nurse Booth approached the cell front and attempted to counsel Johnson, but Booth's efforts were unsuccessful. See id. Defendant Griffin directed an officer to turn off the fan, so the hand-held camera footage could capture the sounds of the chemical-spray bursts. See id. At 4:47 p.m., an officer sprayed Johnson through the cell flap with three bursts. See id. Johnson began yelling to other inmates again. See id. At 4:54 p.m., the same officer approached the cell front and sprayed Johnson through the cell flap with three chemical bursts. See id. Johnson stood up, showered, and continued shouting to other inmates. See id. Later, he sat down on the floor, and refused to stand up when the officers directed him to do so. See id. At 5:02 p.m., when Johnson lowered himself to a sitting position and attempted to stand, he lost his footing, fell and struck the top of his head on the lower part of the shower cell door. See Def. Exs. B, Doc. 20-3 at 6; D. Officers brought Johnson dry clothes, and gave him a "last chance" to stand up for an escort to the nurse. See Def. Ex. D. At 5:15 p.m., an officer sprayed Johnson with chemical agents. See id. Johnson refused to put on his dry clothes for the escort. See id.

Defendant Griffin called for a cell extraction team to remove Johnson from the decontamination cell. See id. The team, however, did not have to enter the cell because Johnson had ceased his disorderly behavior. See id. Johnson walked backwards out of the

23

cell and knelt down, as the team members placed leg restraints on him. See id. In the Incident Report, Griffin explained that the extraction team was used "to reduce the risk of injury to staff present" if Johnson resumed his combative behavior. Def. Ex. B, Doc. 20-3 at 6; see Griffin Decl. at 1-2. The extraction team escorted Johnson to a decontamination shower on wing three without any incident. See Def. Ex. D. At 5:35 p.m., Johnson took off his clothes and showered. See id. The extraction team escorted Johnson to the medical department for an examination. See id. At 6:01 p.m., officers placed Johnson in a holding cell to await his transfer to SCI. See id. Officers removed Johnson from the holding cell at 6:12, and placed him in a van for transportation to SCI at 6:15 p.m. See id.

Officer Patrick D. Stone, the hand-held camera operator, wrote a DR against Johnson for inciting or attempting to incite riots. See Def. Ex. H, Doc. 20-9 at 2-3. Officer Stone provided the following facts to support the DR.

> Inmate Johnson, Gregory DC #W08280 is being charged with a violation of Chapter 33-601.314 F.A.C. Rules of Prohibited Conduct[] for (2-2) inciting or attempting to incite riots, strikes, mutinous acts, or disturbances – conveying an inflammatory, riotous, or mutinous communication by word of mouth, in writing or by sign, symbol, or gesture. On December 28, 2016 at approximately 4:20 PM, I was assigned as camera operator for inmate Joh[n]son, Gregory DC #W08208 post use of force filming. During the filming process, I heard inmate Johnson yelling on the wing in [an] attempt to gain the attention of other

24

inmates on the wing[.] "All bloods rise up with me."[15] "Stand the f[-]ck up." Inmate Johnson was order[ed] to cease his action to which inmate Johnson reluctantly complied. The shift supervisor was notified and authorized this report. Inmate Johnson will remain in administrative confinement pending disposition of this report for (2-2) inciting or attempting to incite riots . . . .

See id. at 2.

The video evidence is reliable, and provides a chronology of how the incident unfolded. The video does not show Defendant Griffin or any extraction team members using excessive force upon Johnson. Nor, does it show any unjustified chemical spraying. Rather, it depicts Johnson as an unruly and noncompliant inmate who was calling out for help from other inmates, and attempting to incite other inmates. It also shows Defendant Griffin as he monitored the decontamination cell front. Periodically, in an orderly fashion, Griffin announced the progression of events in front of the camera. Notably, Defendants McKinley, Bryant, and Anderson were not present during any of the chemical spraying. Moreover, the extraction team never entered the decontamination shower cell. Instead, Johnson walked backwards out of the cell, and knelt down while the extraction team members placed leg restraints on him without incident. Such an organized and planned cell exit

---

[15] At deposition, Johnson stated that he is a member of the Bloods, a prison gang. See P. Depo. at 48. He said that the video captured what he said. See id.

was necessary since Johnson had resisted lawful orders to submit to restraints.

Given the evidence submitted by Defendants, the Court finds they have met their initial burden of showing, by reference to Griffin's declaration, the use of force report, and video evidence, that appropriate and minimal force (three applications of chemical agents) was used against Johnson. Thus, Johnson is required to present evidence to show that there is a genuine issue for trial; he has not done so. If this case were to proceed to trial, Johnson would have only his testimony to support his claims. He has not presented any refutation of the Defendants' evidence. He acknowledges that the hand-held video recorded what transpired. All the exhibits submitted by Defendants support their position that the chemical spraying was necessary, and only minimal force was used.

Notwithstanding the ease with which a prisoner can make an excessive force claim, in many excessive force cases the competing testimony of the prisoner and the correctional officers can be enough to defeat summary judgment. However, both the Supreme Court and the Eleventh Circuit have recognized that summary judgment is appropriate in certain scenarios even if there are conflicting versions of events.

> [W]hen "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it," a court

> should not adopt the contradicted version for purposes of ruling on a motion for summary judgment. <u>Scott</u>, 550 U.S. at 380[16] . . . . This is so because when the non-movant's assertion is "so utterly discredited" by the record, no "genuine" dispute of material fact exists sufficient to prompt an inference on behalf of the non-movant. <u>Id.</u>

<u>Singletary v. Vargas</u>, 804 F.3d 1174, 1183 (11th Cir. 2015); <u>see</u>

<u>Perez v. Suszczynski</u>, 809 F.3d 1213, 1221 (11th Cir. 2016) ("[W]hen

opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."

(quotations and citation omitted)).

Here, given the strong and consistent statements of the

corrections officers, <u>see</u> Griffin Decl; Def. Ex. B, and the video

evidence, <u>see</u> Def. Exs. D; E, showing that neither Defendant

Griffin nor the extraction team used force upon Johnson, that

neither Defendant McKinley nor Defendant Bryant were present during

the incident, and that the corrections officer sprayed Johnson in

an attempt to bring him into compliance with lawful commands, and

the lack of corroborating evidence to support Johnson's claim, this

is the type of case envisioned by the Supreme Court in <u>Scott</u>, 550

U.S. 372, as to which summary judgment is appropriate. In light of

the evidence presented by Defendants and Johnson's failure to

---

[16] <u>Scott v. Harris</u>, 550 U.S. 372 (2007).

provide any evidence other than his own uncorroborated version, no reasonable jury could find for Johnson under these circumstances surrounding the chemical spraying. See generally Goodman v. Kimbrough, 718 F.3d 1325, 1332 (11th Cir. 2013) (recognizing that "to defeat a motion for summary judgment, [the plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; [t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient" (quotations and citation omitted)). As such, Defendants' Motion is due to be granted as to Johnson's Eighth Amendment claims relating to the December 28th chemical spraying at the decontamination shower cell against Defendants McKinley, Bryant, and Griffin.

### 4. Defendant Tony Anderson

Johnson asserts that HCI Warden Anderson authorized his subordinate officers to use excessive force on him. See Complaint at 5. Defendant Anderson maintains that Johnson fails to state a claim against him. See Motion at 10-15. In response, Johnson acknowledges that Defendant Anderson was not personally present during the incidents. See P. Depo. at 49. The Eleventh Circuit Court of Appeals has instructed:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is

extremely rigorous." <u>Gonzalez</u>, 325 F.3d at 1234 (internal quotation marks and citation omitted).[17] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

"The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" <u>Cottone</u>, 326 F.3d at 1360 (citation omitted).[18] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." <u>Brown</u>, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," <u>Gonzalez</u>, 325 F.3d at 1235, or that a supervisor's "custom or policy . . . resulted in deliberate indifference to constitutional rights," <u>Rivas v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008) (<u>overruled on other grounds</u> as recognized by <u>Randall v. Scott</u>, 610 F.3d 701, 709 (11th Cir. 2010) (rejecting the application of a heightened pleading standard for § 1983 cases involving qualified immunity));

---

[17] <u>Gonzalez v. Reno</u>, 325 F.3d 1228 (11th Cir. 2003).

[18] <u>Cottone v. Jenne</u>, 326 F.3d 1352 (11th Cir. 2003).

see also <u>Keith v. DeKalb Cty., Ga.</u>, 749 F.3d 1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights,[19] (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights,[20] (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it,[21] or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct. <u>See</u> <u>id.</u> at 1328-29 (listing factors in context of summary judgment).[22] A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees. <u>Greason v. Kemp</u>, 891 F.2d 829, 836-37 (11th Cir. 1990).

<u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).

At deposition, Johnson stated that Anderson was responsible for the

---

[19] <u>See</u> <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

[20] <u>See</u> <u>Goebert</u>, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[21] <u>See</u> <u>Douglas v. Yates</u>, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[22] <u>West v. Tillman</u>, 496 F.3d 1321 (11th Cir. 2007).

violations due to his position as the Warden. <u>See</u> P. Depo. at 51. Thus, to the extent Johnson seeks to impose liability on Defendant Anderson on the basis of respondeat superior, Defendants' Motion is due to granted. Insofar as Johnson seeks to hold Defendant Anderson responsible for Defendants McKinley, Bryant, and Griffin's actions, the Court finds that Johnson fails to point to any evidence suggesting that Anderson was personally involved in, or otherwise causally connected to, the alleged violations of his federal statutory or constitutional rights. <u>See</u> Complaint at 5; P. Depo. at 49-54. As such, Defendants' Motion is due to be granted as to Johnson's Eighth Amendment claim against Defendant Anderson.

Next, Johnson asserts that Defendant Anderson deprived him of his right to due process of law when he transferred Johnson to SCI. <u>See</u> Complaint at 5. He states that the same-day transfer thwarted his ability to identify the officers involved in the excessive use of force. <u>See</u> <u>id.</u> Defendants maintain that "the most likely reason" Johnson was transferred was because he had been involved in a physical altercation with McKinley that resulted in injuries, not to deprive Johnson of any due process. <u>See</u> Motion at 14-15 (citing Def. Ex. B, Doc. 20-3 at 29-30 (documenting McKinley's injuries)). Defendant McKinley wrote two DRs, and Officer Stone wrote a DR due to Johnson's noncompliant behavior that afternoon. <u>See</u> Def. Exs. F; G; H. Notably, "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State[.]"

<u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983) (footnote omitted); <u>see also</u> <u>Barfield v. Brierton</u>, 883 F.2d 923, 936 (11th Cir. 1989) (citing <u>Meachum v. Fano</u>, 427 U.S. 215 (1976)) (stating "inmates usually possess no constitutional right to be housed at one prison over another"). In light of the foregoing, Defendants' Motion is due to be granted as to Johnson's due process claim against Defendant Anderson.

## B. Plaintiff's Request to Amend

Johnson seeks leave to amend his Complaint. <u>See</u> Motion for Leave to Amend (Motion to Amend; Doc. 36). He asserts that he has learned the identity of additional individuals that he was unable to identify until Defendants submitted their summary judgment exhibits. <u>See</u> Motion to Amend at 1. Johnson states that he wants to add all involved officers, bystanders, and supervisors as Defendants. <u>See</u> Response at 24. He lists the following additional individuals that he seeks to hold responsible for violation of his federal constitutional rights: Major Jerry Shuler, Sergeant Zachary Smith, Sergeant Edgar Soules, Sergeant John Buda, Sergeant Edward Jussely, Officer Wayne Haley, Officer Linda Mercer, Officer Benjamin Roman, Officer David Noles, Officer Christopher Adams, Officer Patrick D. Stone, Officer John Clark, and Registered Nurse Albert Booth. <u>See</u> <u>id.</u> He also wants to amend "so he can properly raise his claim against defendant Tony Anderson." <u>See</u> <u>id.</u> at 5. Additionally, he states that he wants to reopen discovery so that

he can identify the third officer who was involved in the "initial use of force with Bryant and McKinley." <u>See</u> Motion to Amend at 2. Defendants oppose Johnson's request to amend. <u>See</u> Response to Motion for Additional Discovery and Motion for Leave to Amend (Def. Response; Doc. 39). They maintain that they would be substantially prejudiced if the Court permitted Johnson to amend at this late stage of the proceedings, especially when Johnson failed to engage in timely discovery and was notified at his deposition that the time for discovery had ended. <u>See</u> Def. Response at 3-4. They state that Johnson fails to identify what claims he intends to bring against the individuals he seeks to add as Defendants. <u>See</u> <u>id.</u> at 4.

Rule 15(a)(1), Federal Rules of Civil Procedure, establishes that "[a] party may amend [the party's] pleading once as a matter of course within" a certain time frame. Thereafter, a party may amend its pleadings only upon leave of court or by obtaining written consent of the opposing party. <u>See</u> Rule 15(a)(2). The rule provides that "[t]he court should freely give leave when justice so requires." <u>Id.</u> As a result, "[t]here must be a substantial reason to deny a motion to amend." <u>Laurie v. Ala. Ct. of Crim. App.</u>, 256 F.3d 1266, 1274 (11th Cir. 2001) (per curiam) (citation omitted). Substantial reasons justifying a court's denial of a request for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>see</u> <u>also</u> <u>Maynard v. Bd. of Regents of Div. of Univ. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.</u>, 342 F.3d 1281, 1287 (11th Cir. 2003). In order to deny leave to amend, the Court must identify a "justifying reason." <u>Foman</u>, 371 U.S. at 182.

Preliminarily, the Court notes that a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. <u>See</u> Fed. R. Civ. P. 7(b); <u>see</u> <u>also</u> <u>Rosenberg v. Gould</u>, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1222 (11th Cir. 1999)). Thus, Johnson's request for leave to amend included in his summary judgment response, <u>see</u> Response (Doc. 38) at 24, is improper. The Court will not entertain Johnson's request for relief included in his Response.

Next, Johnson's Motion to Amend (Doc. 36) is due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s)). Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. <u>See</u> Local Rule 3.01(a). Local Rule 3.01(g) requires certification that the moving party has

conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. See Local Rule 3.01(g). In addition to these deficiencies under the Local Rules, the Motion to Amend also fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999); see also McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); United States ex. rel. Atkins v. McInteer, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (same). Thus, the Court will deny Johnson's Motion to Amend.

### C. Plaintiff's Motion to Reopen Discovery

Johnson asserts that he needs more time for discovery. See Motion for More Time for Discovery (Motion to Reopen Discovery; Doc. 35). He states that he did not understand how to engage in discovery until he was deposed on October 31, 2018, and blames Defendants' counsel for "unfair gamesmanship" and misleading him at deposition. See Motion to Reopen Discovery at 2. Defendants oppose the Motion to Reopen. See Def. Response at 2-3. They maintain that Johnson neither submitted any discovery to Defendants nor filed a motion to extend the discovery deadline prior to the filing of

Defendants' summary judgment motion. See id. at 2. They state that the first time Johnson requested any discovery from Defendants was within his summary judgment response. See id. at 3. Johnson acknowledges that he enumerated his discovery requests in his summary judgment response. See Motion to Reopen at 2; Response at 5-8. At the October 31, 2018 deposition, Defendants' counsel discussed the discovery process with Johnson, see P. Depo. at 59-60, since the discovery deadline had passed the day before (October 30th). See Order (Doc. 18). Given the record, including Johnson's failure to engage in timely discovery as well as waiting over seven months to request to reopen discovery, the Motion to Reopen Discovery is due to be denied.

### D. Plaintiff's Request to Strike Defendants' Motion for Summary Judgment

Johnson requests that the Court strike Defendants' Motion as "confusing" and misleading. Response at 19. As previously stated, a request for affirmative relief is not properly made when simply included in a response to a motion. See Rosenberg, 554 F.3d at 965. Thus, Johnson's request to strike included in his summary judgment response, see Response (Doc. 38) at 19, is improper. Moreover, even if it were proper to include such a request in his Response, the request is otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g). Thus, the Court will not entertain Johnson's request for relief included in his Response.

In light of the foregoing, it is now

**ORDERED AND ADJUDGED:**

1.    Defendants' Motion for Summary Judgment (Doc. 20) is **PARTIALLY GRANTED** as to Johnson's (1) Eighth Amendment claim relating to the December 28th chemical spraying at the decontamination shower cell against Defendant Griffin (the third incident), and (2) Eighth Amendment and due process claims against Defendant Tony Anderson. Otherwise, the Motion is **DENIED**.[23]

2.    The Clerk shall terminate Defendant Tony Anderson and make the appropriate notation on the docket.

3.    The parties are encouraged to discuss the possibility of settlement and notify the Court if their efforts are successful. In doing so, Plaintiff and Defendants are encouraged to maintain a realistic approach in making and/or considering any settlement offers. If the parties are unable to settle the case privately, and want a Magistrate Judge to conduct a settlement conference, they should notify the Court **no later than September 12, 2019.**

4.    Plaintiff's Motion for More Time for Discovery (Doc. 35) is **DENIED.**

---

[23] Johnson's remaining Eighth Amendment claims are (1) Defendants McKinley, Bryant, and Griffin's excessive use of force (first incident); (2) Defendants Bryant and Griffin's failure to intervene (first incident); and (3) Defendant Griffin's excessive use of force relating to the four-man escort of Johnson from the laundry room to the decontamination shower cell (second incident).

5.   Plaintiff'S Motion for Leave to Amend (Doc. 36) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of August, 2019.

MARCIA MORALES HOWARD
United States District Judge

sc 8/7
c:
Gregory Johnson, FDOC #W08280
Counsel of Record